**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**EVERETT G. THORNTON, JR.**                                    **CIVIL ACTION**

**VERSUS**

**CORNEL H. HUBERT**                                             **NO. 08-111-A-M2**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, June 10, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**EVERETT G. THORNTON, JR.**                               **CIVIL ACTION**

**VERSUS**

**CORNEL H. HUBERT**                                          **NO. 08-111-A-M2**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 5) filed by Everett G. Thornton, Jr. ("Thornton"). The State has filed an opposition (R. Doc. 10) to Thornton's petition.

## FACTS & PROCEDURAL BACKGROUND

In the Spring of 2004, Thornton was charged with simple burglary, felony theft, and carjacking relating to two incidents which occurred on the same date. He initially pled not guilty to the charges of simple burglary and felony theft, but on November 3, 2004, the prosecution nolle prossed those charges, in consideration of which, Thornton entered a plea of guilty to the charges of carjacking and a reduced charge of misdemeanor theft. Following a colloquy at the November 3, 2004 plea hearing, the state trial judge accepted Thornton's guilty plea as knowing and voluntary, and the State agreed not to multiple bill the defendant as a habitual offender. The trial court then ordered that a pre-sentence investigation be conducted. On February 14, 2005, Thornton was sentenced, on the carjacking charge, to twenty (20) years imprisonment without the benefit of probation, parole, or suspension of sentence to run consecutive with any other time he was serving, and, on the misdemeanor theft charge, to six (6) months in parish prison to run consecutive to his carjacking sentence and any other time he was serving. Thornton did not appeal his convictions and sentences.

On or about March 22, 2006, Thornton filed a post-conviction relief application, wherein he asserted the following claims: (1) Whether his conviction was obtained by a plea of guilty which was unlawfully induced and/or not made in a knowing, intelligent, and voluntary manner with full understanding of the nature of the offense charged and whether the court failed to ascertain the factual basis and reason for the defendant's plea; and (2) whether he received effective assistance of counsel where his counsel (a) failed to test the adversarial process of the prosecution's case and evidence intended to be used, prior to advising him to plead guilty to the charge of carjacking, (b) failed to factually advise him of the actual sentence exposure as a consequence of his guilty plea, (c) failed to file any pre-trial and/or post-trial motions on behalf of applicant; and (d) failed to object at critical stages of the plea proceedings and at sentencing. Thornton's post-conviction relief application was denied on March 27, 2006. He then applied for writs to the First Circuit Court of Appeals and the Louisiana Supreme Court, which were denied on October 2, 2006 and October 5, 2007 respectively. *See, State ex rel. Thornton v. State*, 2006-3022 (La. 10/5/07), 964 So.2d 381.

Thornton has now filed the present habeas petition, wherein he asserts the following claims: (1) that his trial counsel was ineffective at all stages of his proceedings; (2) that the trial court failed to inquire into the basis for Thornton's "belief of being guilty"; (3) that defense counsel and the trial court "did not correctly understand, and so aprised (sic) applicant of the essential elements of the criminal charges to which he was pleading," such that his guilty plea was not voluntary and/or intelligent as is required by the U.S. Constitution; and (4) that the cumulation of errors and the insufficiency of the evidence

warrant reversal of Thornton's conviction.[1]  The State concedes that Thornton's first three claims were exhausted through the state court system but contends that they should be dismissed for lack of merit.  It further asserts that Thornton's final claim should be dismissed for lack of exhaustion.

## LAW & ANALYSIS

I.  **Legal standards applicable to exhausted habeas claims:**

In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court, the Court must find that adjudication of such claim:  (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) and (d)(2).

In addition, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir.

---

[1] The Court agrees with the State that, although Thornton has generally mentioned other "claims" and "issues of law" in his habeas petition, including allegations that his conviction was obtained by use of a coerced confession and involuntary self-incrimination, he has failed to set forth any factual detail, legal argument, or evidence relative to those claims/issues, and the merits of those claims therefore will not be considered herein.  Furthermore, Thornton failed to exhaust his state court remedies relative to those claims so they should be dismissed on that ground as well.  *See*, Section II of the Law & Analysis portion of this report, *infra*, for legal standards relative to exhaustion.

1994). Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to § 2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures. *Id.* at 631.

**(A)     Ineffective Assistance of Counsel:**

A habeas petitioner seeking to prove ineffective assistance of counsel must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must affirmatively demonstrate:

(1)     that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)     that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796

F.2d at 816. When it is apparent that the alleged incompetent acts of the attorney were in fact conscious strategic or tactical trial decisions, review of the acts must be "highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2587 91 L.Ed.2d 305 (1986). Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must also affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17. A conscious and informed tactical decision cannot be the basis for constitutionally ineffective assistance of counsel unless it is "so ill-chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1982).

In his habeas petition, Thornton argues that he received ineffective assistance of trial counsel because his counsel "improperly handled his case and failed to investigate the

5

petitioner's case." He also contends that his counsel failed to advise him of "actual sentence exposure as a consequence[ ] of his plea of guilty to the amended charges." Finally, he contends that his counsel failed to file proper pre-trial and/or post-trial motions and "objections" on his behalf and failed to object at other critical stages of the plea hearing and at sentencing.

The Court has reviewed the state court record and finds that Thornton's allegations of ineffective assistance of counsel lack merit. First, it appears that Thornton's counsel filed several pre-trial motions to obtain information and discovery relative to Thornton's case, including a Motion to Produce and for Discovery (p. 15-16 of the state court record), a Motion for Bill of Particulars (p.17-18 of the state court record), and a Motion for Preliminary Examination (p. 19 of the state court record).[2] He also filed a Motion and Order

---

[2] In the motion for discovery, Thornton's counsel requested the following documents in the possession, custody, control, or knowledge of the State: (1) documents concerning extradition of Thornton, or waiver thereof; (2) all arrestee right forms signed by Thornton; (3) all arrest warrants, search warrants, accompanying affidavits, and returns thereon; (4) all relevant written or recorded confessions or statements of any nature, including recorded testimony before the Grand Jury; (5) written notice of the existence and substance of any oral confessions or statements of any nature made by Thornton, before or after arrest, including the times, dates, and the names of the persons to whom such oral confessions or statements were made and which the State intended to offer into evidence; (6) all records of the defendant's criminal arrests and convictions; (7) a written list authorizing or permitting the defendant to inspect, copy, examine, test scientifically, photograph, or reproduce all books, papers, documents, photographs, tangible objects, buildings, or places that were (a) favorable to the defendant and material and relevant to his guilt or punishment, (b) intended for use by the State as evidence at trial, and (c) obtained from or belong to the defendant; (8) the results, reports or copies of any physical or mental examination and/or scientific tests or experiments made in connection with or material to Thornton's case; (9) any relevant written or recorded confessions or inculpatory statements made by a co-defendant and intended for use at trial, and any and all exculpatory evidence, even though not intended for use at trial; (10) written notice of the State's intent to offer evidence of the commission of any other crime admissible under La.C.E. art. 404; (11) written notice of the State's intent to use hearsay statements of co-conspirators

to have those pre-trial motions set for contradictory hearing and a Motion for Speedy Trial on May 13, 2004. Finally, he filed a Motion for Severance, seeking to separate Thornton's trial from that of the co-defendant jointly indicted with him, on the ground that Thornton could not obtain a fair trial if tried jointly with the co-defendant. It was only after discovery was requested and received and the matter was set for trial on November 3, 2004 that counsel advised petitioner to plead guilty to the charges of carjacking and misdemeanor theft. Contrary to Thornton's contention herein, it does not appear that his counsel failed to investigate and obtain discovery regarding his case.

Furthermore, even assuming Thornton's counsel failed to advise him of his potential sentence exposure as a result of entering his guilty plea, Thornton has failed to demonstrate any prejudice resulting from such alleged failure, as Thornton was fully informed by the Court of his potential sentence exposure at the November 3, 2004 hearing prior to pleading guilty, and he indicated that he understood same. *See, infra.* Finally, although Thornton has alleged in a conclusory manner that his counsel failed to file proper

---

pursuant to La.C.E. art. 801(d)(3)(b); and (12) written notice of the names and addresses of witnesses upon whom the State intends to rely in order to establish the defendant's presence at the place, at the time of, and on the date of the alleged offense. The State responded to those discovery requests on May 21, 2004.

In the Motion for Bill of Particulars, Thornton's counsel requested various details about the offenses charged, including: (1) the time of day that it was contended the defendant committed the offenses; (2) the place within the parish where the offenses were allegedly committed; (3) the statute(s), and specific sections thereof, upon which the prosecution was based; (4) the owner or lessee of the structure identified in the indictment on the date of the alleged burglary; (5) the specific offenses the State contends the defendant intended to commit at the time of the alleged offense; (6) the article or articles stolen or received, to whom they belonged, and the value of same; and (7) the victim and weapon used, if the charge was armed robbery or aggravated burglary.

pre-trial and/or post-trial motions and "objections" on his behalf and failed to object at other critical stages of the plea hearing and at sentencing, he has not provided any specific factual details or supporting evidence regarding what motions and/or objections should have been asserted on his behalf, nor has he demonstrated that, if those motions and/or objections had been raised, there is a reasonable probability that the result of the proceedings would have been different. Conclusory assertions are insufficient to overcome the "strong presumption that counsel's representation falls within the wide range of reasonable professional assistance," or that, under the circumstances, the challenged action "might be considered sound trial strategy." *Bray v. Quarterman*, 2008 WL 360571 (5th Cir. 2008).[3] The state court's rejection of Thornton's ineffective assistance of counsel claim was not an unreasonable application of clearly established federal law, and such claim should therefore be dismissed with prejudice.

**(B)   The trial court's alleged failure to inquire as to the factual basis for Thornton's guilty plea:**

In this claim, Thornton contends that the trial court failed to inquire into the factual basis for his guilty plea. However, when a guilty plea is otherwise voluntary, there is no necessity, in state court, to ascertain a factual basis for the plea unless the accused protests his guilt or for some other reason the trial court is put on notice that there is a need for such an inquiry. The absence of a factual basis when entering a guilty plea does not render the plea constitutionally infirm, if the plea is determined to be made knowingly and intelligently. *State v. McCullough*, 615 So.2d 26 (La. App. 3 cir. 1993); *Banks v.*

---

[3] *U.S. v. Demik*, 489 F.3d 644 (5th Cir. 2007)(Conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel); *U.S. v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005).

*McGougan*, 717 F.2d 186 (5th Cir. 1983)(The due process clause imposes no constitutional duty on state judges to ascertain a factual basis prior to accepting a guilty plea unless the judge is put on notice that there may be some need for such an inquiry as, for example, when an accused asserts his innocence).[4]  As discussed *infra*, Thornton's guilty plea was entered knowingly and voluntarily, and it therefore was not necessary for a factual basis for such plea to be presented in state court.  Furthermore, Thornton did not, at any time prior to or during the plea hearing, protest his guilt, nor was there any other reason the trial court should have been on notice of the need for an inquiry into the factual basis for the plea.

Moreover, even though a presentation of the factual basis for Thornton's guilty plea was not required, the state court record nevertheless reflects that the trial judge read aloud to the petitioner the statutes concerning carjacking and misdemeanor theft, and specifically asked Thornton to explain to the court what "ma[d]e him guilty of the offense[s]."  *See*, State court record, p. 122-126.  Thornton then explained, relative to the carjacking offense, that he "seen [sic] a truck running parked at a convenience store and got in the driver's side of the automobile and put it in gear and drove off with it."  *Id.*, p. 126.  Thornton also explained that he was guilty of misdemeanor theft because he "took" a second truck that same day, which contained some tools, as well as some cigarettes from a convenience store.  *Id.*  The prosecution provided additional factual information concerning the offenses

---

[4] *See also, Orman v. Cain*, 228 F.3d 616 (5th Cir. 2000)(Where a defendant proclaims his innocence but pleads guilty anyway, due process is satisfied only if the state can demonstrate a factual basis for the plea).

committed by Thornton, and Thornton did not object to the accuracy of that information.[5]
*Id.*, p. 126-129.  Thus, even if the presentation of a factual basis was not required, it was nevertheless provided, contrary to Thornton's assertion, and this claim should therefore be dismissed with prejudice.

**(C)     Was Thornton's guilty plea knowing and voluntary?**

In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, 279 (1969), the U.S. Supreme Court explained that a guilty plea is more than a confession which admits that the accused did various acts.  Such a plea is itself a conviction, and nothing remains but to give judgment and determine punishment.  *Id.*, at 242.  The seriousness of a guilty plea therefore mandates that it "not only must be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances." *Gilliard v. Scroggy*, 847 F.2d 1141, 1143 (5th Cir. 1988), quoting *Grantling v. Balkcom*, 632 F.2d 1261, 1264 (5th Cir. 1980)(quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970)).  To satisfy due process, the state trial judge must, at

---

[5] Specifically, the prosecution added the following information concerning the carjacking offense:

> Judge, in connection with Mr. Everett Thornton's plea, just to make sure, out of an abundance of caution that there is a good basis for the plea.  The statute requires the fact that the carjacking and car be taken in the presence of the person who owns the car or either another person.  Mr. Thornton didn't say that.  I want the record clear the victim – the complaining witness, who owns the car, was present.  That fits the statute.  That would make the plea clear that he did violate the statute.

*Id.*, at 126-127.  The trial judge then asked the defendant if there were "a couple of kids in the car," which the defendant admitted.  *Id.*, at 127.

10

a minimum, inform the defendant of the critical elements of the crime to ensure that he receives "'real notice of the true nature of the charge against him.'" *Gilliard*, at 1143, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976). A defendant must also "be advised and understand the consequences of the guilty plea." With respect to sentencing, that means the defendant "must know the maximum prison term and fine for the offense charged." *Burdick v. Quarterman*, 504 F.3d 545 (5th Cir. 2007), quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).[6]

As mentioned above, Thornton contends that his guilty plea was not knowing and voluntary because the trial court did not apprise him of the "essential elements of the criminal charges to which he was pleading." However, the transcript from the plea hearing reveals that, prior to the acceptance of Thornton's guilty plea, the trial judge read aloud to petitioner the applicable statutes for the charges of carjacking, La. R.S. 14:64.2, and misdemeanor theft, La. R.S. 14:67, including the paragraphs of those statutes regarding possible sentence exposure. *See*, State court record, p. 122-124. The trial judge specifically asked Thornton if he understood the charges against him and the possible penalties if he pled guilty to such charges or was found guilty after trial, to which Thornton responded, "Yes, sir." *See*, State court record, p. 124.

---

[6] The U.S. Supreme Court warned, in *Boykin*, that "[w]hat is at stake for an accused facing . . . imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, at 243-44. "When the judge discharges that function, he leaves a record adequate for any review that may be later sought." *Id.*, at 244. The Supreme Court advised that, "[i]f these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, *inter alia*, an attempt to satisfy itself that the defendant understands . . . the permissible range of sentences." *Id.*, at 244, n. 7.

  The trial judge also advised petitioner as to the use of his conviction to provide an enhanced penalty on any subsequent charges of that nature and explained to the petitioner the following rights that he would be foregoing if he entered a plea of guilty: the right to plead not guilty and the burden of proof that rests upon the State to prove each and every element of the offense for which he was charged beyond a reasonable doubt; the right to a trial by a judge or jury; the right to the assistance of counsel and, if he could not afford counsel, to have counsel appointed to assist him; the right to confront his accusers and to cross-examine them; the right to remain silent and against self-incrimination; the right to have witnesses subpoenaed for their compulsory attendance at trial; and the right to an appeal. *Id.*, p. 124-125. Thornton stated that he had been advised of the above legal and constitutional rights and waived those rights. *Id.*, at 125. He further confirmed that no one had coerced him or promised him any leniency in order to get him to enter a plea of guilty. *Id.*, p. 129. As noted above, Thornton also admitted to the charges against him and did not contest the factual information concerning the offense as set forth by the prosecution. *Id.*, p. 126-129. Thornton's counsel further indicated that he had advised petitioner of his legal and constitutional rights and that he felt such advice was understood by petitioner. *Id.*, at p. 130. Thornton confirmed that he was satisfied with the legal representation he had received from his counsel and that he had no questions for the trial judge, the district attorney, or his counsel. *Id.*, p. 131. Finally, the trial judge advised petitioner that he had two (2) years from the date that his judgment of conviction and sentence became final within which to file an application for post-conviction relief. *Id.*

  A fair reading of the entirety of the exchanges between Thornton and the trial judge during the plea hearing reflects that Thornton entered his guilty plea freely, knowingly, and

voluntarily under the legal standards set forth above.  Accordingly, the state courts did not unreasonably apply federal law in reaching that conclusion, and this claim should therefore also be dismissed with prejudice.

## II.     Insufficiency of the Evidence/Cumulation of Error claim:

As mentioned above, the State contends that Thornton's insufficiency of the evidence/cumulation of error claim should be dismissed because he failed to exhaust that claim in the state courts prior to raising it in his federal habeas petition.  This Court reviews *de novo* whether a federal habeas petitioner has exhausted all available state court remedies.  *Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008).  Under 28 U.S.C. §2254(b)(1), a defendant must exhaust all claims in state court prior to requesting federal collateral relief.  *Id.*  "The exhaustion requirement is satisfied only when the substance of the federal habeas claim has been fairly presented to the highest [state] court." *Id.*, quoting *Moris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004).[7]  Generally, federal courts dismiss habeas petitions asserting claims not exhausted in state court.  *Id.*, citing 28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

The Court has reviewed the state court record and finds no evidence that Thornton ever raised his insufficiency of the evidence/cumulation of error claim before the state courts on direct appeal or during his state post-conviction proceedings, and such claim

---

[7] The exhaustion of state remedies requires a petitioner to provide the highest court of the state a fair opportunity to apply the controlling federal constitutional principles to the same factual allegations before a federal court may review any alleged errors.  *Smtih*, at 402, citing *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

should therefore be dismissed.  Additionally, because Thornton would be time-barred if he returned to state court and attempted to raise this claim through an application for post-conviction relief,[8] this claim should be dismissed with prejudice as procedurally barred.

## RECOMMENDATION

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 5) filed by Everett G. Thornton, Jr., be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, June 10, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[8] La. C.Cr.P. art. 930.8 provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two (2) years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless certain exceptions (which do not apply in this case) are applicable.  La. C.Cr.P. art. 930.8.

Because Thornton did not file a direct appeal, his conviction and sentence became final on December 3, 2004, thirty (30) days after the rendition of the judgment of his conviction and sentence on November 3, 2004, pursuant to La.C.Cr.P. art. 914.  Because more than two (2) years have elapsed since December 3, 2004, any attempt by Thornton to return to state court and now file a post-conviction claim relating to insufficiency of the evidence/cumulation of errors would be time-barred pursuant to La.C.Cr.P. art. 930.8.